IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TABFG, LLC, ) | |
| ) | |
| Plaintiff, ) | No. 08 C 6979 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| RICHARD PFEIL, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff TABFG, LLC has brought a five count complaint against defendant Richard Pfeil alleging conversion, tortious interference with contractual relations, tortious interference with prospective economic advantage, conspiracy and punitive damages. Defendant Pfeil has moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and under Fed. R. Civ. P. 12(b)(7) for failure to join a necessary party. For the reasons that follow, defendant's motion is granted in part and denied in part.

## FACTS

In April 2003, plaintiff entered into a joint venture with NT Prop., LLC ("NT Prop."), an Illinois limited liability company for the purpose of trading securities and future products. The managers of NT Prop. were Larry Nocek and William D. Anthony, Jr. According to the complaint, defendant Pfeil was not an officer, director or manager of NT Prop., although a "sham" entity owned by Pfeil, Pfeil Electronic Trading, LLC, formerly Pfeil Commodities Fund LLC ("Pfeil Commodities"), was a member of NT Prop. According to the complaint Pfeil directed all of Anthony's actions in connection with the joint venture for Pfeil's own personal interests.

Under the terms of the joint venture agreement, plaintiff made all the trades for the joint venture and NT Prop. provided funding. The agreement further provided for a distribution to plaintiff of 50% of the net trading profits of the joint venture, less plaintiff's share of certain start-up expenses, legal fees and settlement costs.

The joint venture traded from its inception in April 2003 until September 17, 2003, at which time the United States District Court in Philadelphia ordered that plaintiff, Cal Fishkin and Igor Chernomzav, plaintiff's employees who were trading for the joint venture, be enjoined from making certain other trades that they were conducting on behalf of the joint venture. During the time that the joint venture traded, it realized substantial trading profits in the amount of at least $3,411,144.70.

After the injunction was entered, plaintiff made numerous requests and demands to Pfeil, Anthony and Nocek that the joint venture funds be distributed in accordance with the joint venture agreement. In January 2004, Pfeil and Nocek conspired to and acted in concert to covert most of the joint venture funds for themselves. Although some distributions were made to Fishkin and Chernomzav, funds belonging to plaintiff in the amount of at least $719,364.41 were distributed from the joint venture to Pfeil. The distributions were funneled through one or more of Pfeil's allegedly "sham" entities, including Pfeil Commodities. The complaint alleges that Pfeil personally received distributions in this manner from the joint venture in or about January 2004 in amounts ranging from $2,670,000 to $2,272,000. An additional $100,000 was distributed to the attorneys for Pfeil and Nocek. Nocek received the distribution of an additional $600,000 to $650,000.

**DISCUSSION**

In Count I, plaintiff claims that defendant, acting in concert with Nocek, converted most of the joint venture's trading profits to themselves. According to the complaint, "funds belonging to [plaintiff] in the amount of $719,364.41 were converted by [defendant] and Nocek in January of 2004 . . .." Later in the complaint plaintiff alleges that defendant "took for himself" funds of the joint venture belonging to plaintiff. "Such funds were in the amount of at least $719,364.41." Defendant has moved to dismiss Count I for failure to state a claim for conversion, arguing that the complaint fails to allege identifiable or specific funds. The court agrees.

To state a claim for conversion, plaintiff must allege: (1) an unauthorized and wrongful assumption of control, dominion or ownership by defendant over plaintiff's personalty; (2) plaintiff's right to the property; (3) plaintiff's right to immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property. Fonda v. General Casualty Co. of Ill., 279 Ill.App.3d 894, 899 (1st Dist. 1996). Because the claim alleges a conversion of money, the money must be capable of being described as a specific chattel, meaning plaintiff must have a right to "a specific fund or specific money in coin or bills." Mid-America Fire and Marine Ins. Co. v. Middleton, 127 Ill.App.3d 887, 892 (4th Dist. 1984). The money does not have to be "specifically earmarked" for plaintiff, and need not always be a segregated fund, but the converted funds must be "capable of being described, identified or segregated in a specific manner." Independent Trust Corp. v. Fidelity National Title Insurance Co. of New York, 2007 WL 1017858 at *24 (N.D. Ill. 2007) (and cases cited therein).

In the instant case, plaintiff alleges only that defendant and Nocek converted certain funds belonging to the joint venture, some of which, but not all, should have been distributed to plaintiff. Plaintiff cannot identify which specific funds went to Nocek, which went to defendant, or even if any of those funds are still in defendant's possession. In short, plaintiff alleges a general debt owed by defendant to plaintiff, which is insufficient to state a claim for conversion of money. Accordingly, defendant's motion to dismiss Count I is granted.

In Count II, plaintiff alleges that defendant tortiously interfered with plaintiff's contract with the joint venture. To state a claim for tortious interference with contract, plaintiff must allege: (1) the existence of a valid and enforceable contract between it and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional and unjustified inducement of the third party to breach the contract; (4) breach by the third party; and (5) damages as a result of the breach. Strosberg v. Brauvin Realty Services, Inc., 295 Ill.App.3d 17, 32-33 (1st Dist. 1998).

Defendant does not dispute that plaintiff has pled the elements of its tortious interference with contract claim, or any of the other claims in the complaint. Instead, he argues that plaintiff has failed to join a party required under Fed. R. Civ. P. 19, which provides that a person subject to service of process and whose joinder will not destroy subject matter jurisdiction must be joined if:

- A. In that person's absence, the court cannot accord complete relief among existing parties; or

- B. That person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

   (i) as a practical matter impair or impede that person's ability to protect the interests; or

> (ii) leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the injury.

Defendant argues that plaintiff must bring claims against the joint venture, NT Prop., and/ or Pfeil Commodities because, before he can be found liable the court must first determine that the joint venture through its agents, breached the agreement with plaintiff by improperly distributing the funds. Defendant also argues that he cannot be liable unless the corporate veil of Pfeil Commodities is disregarded. Although defendant is correct that to prevail on a tortious interference with contract claim, plaintiff must establish that the joint venture breached the joint venture agreement by failing to properly distribute the profits, that does not make NT Prop. and Pfeil Commodities necessary parties. Plaintiff alleges that defendant personally caused the improper distributions. Whether other persons or entities may also be liable for those improper distributions is irrelevant. Essentially defendant argues that all joint tortfeasors must be named in the action, but it is well settled that a joint tortfeasor is not a necessary party. Pasco International (London) Ltd. v. Stenograph Corp., 637 F.2d 496, 503-05 (7th Cir. 1980). Accordingly, defendant's motion to dismiss based on Rule 19 is denied.

There is, however, a problem with the complaint not raised by defendant. Count III, which attempts to allege a claim for tortious interference with prospective economic advantage, fails to state a claim because it fails to allege an expectancy. Instead, Count III alleges interference with the same business relationship that is alleged in Count II, i.e., the joint venture agreement. Tortious interference with prospective economic advantage does not allow recovery for a continuing breach of an existing contract. Delphi Industries, Inc. v. Stroh Brewing Co., 945 F.2d 215, 219 (7th Cir. 1991). Therefore, the court sua sponte dismisses Count III for failure to state a claim.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is granted as to Counts I and III and denied in all other respects. Defendant is ordered to answer the remaining counts on or before May 19, 2009. This matter remains set for status on June 3, 2009, at 9:00 a.m.

**ENTER:** **May 1, 2009**

_____
**Robert W. Gettleman**
**United States District Judge**