IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TABFG, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 C 6979 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| RICHARD PFEIL, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff TABFG, LLC has brought a four count First Amended Complaint ("Amended Complaint") against defendant Richard Pfeil ("Pfeil") alleging conversion, tortious interference with contractual relations, conspiracy and punitive damages. Defendant Pfeil has moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim and to strike certain allegations under Fed. R. Civ. P. 12(f). For the reasons stated below, defendant's motion is granted in part and denied in part.

## BACKGROUND

In April 2003, plaintiff entered into a joint venture with NT Prop Trading, LLC ("NT Prop"), an Illinois limited liability company, for the purpose of trading securities and futures products. The managers of NT Prop were Larry Nocek and William D. Anthony, Jr. According to the Amended Complaint, defendant Pfeil was not an officer, director or manager of NT Prop, although a "sham" entity owned by Pfeil, Pfeil Electronic Trading, LLC, formerly Pfeil Commodities Fund LLC ("Pfeil Commodities"), was a member of NT Prop. According to the Amended Complaint, Pfeil directed Anthony's actions in connection with the joint venture for Pfeil's own personal interest.

Under the terms of the joint venture agreement, plaintiff made all the trades for the joint venture and NT Prop provided funding. The agreement further provided for a distribution to plaintiff of 50% of the net trading profits of the joint venture, less plaintiff's share of certain start-up expenses, legal fees and settlement costs.

The joint venture traded from its inception in April 2003 until September 17, 2003, at which time the United States District Court in Philadelphia ordered that plaintiff, Cal Fishkin and Igor Chernomzav, plaintiff's employees who were trading for the joint venture, be enjoined from making certain trades that they were conducting on behalf of the joint venture. During the time that the joint venture traded, it realized substantial trading profits in the amount of at least $3,411,144.70.

After the injunction was entered, plaintiff made numerous requests and demands to Pfeil, Anthony and Nocek that the joint venture funds be distributed in accordance with the joint venture agreement. In late 2003, Pfeil and Nocek transferred all of the funds belonging to the joint venture, approximately four million dollars, to a new account at the Lakeside Bank. The Amended Complaint alleges that as of January 2004, $1,019,634.41 of the funds held in the account at Lakeside Bank belonged to plaintiff, based on its right to 50% of the net trading profits of the joint venture after certain costs, expenses, and payments. At that time, $290,000 of this amount was distributed to Fishkin and Chernomzav, employees of the plaintiff. The Amended Complaint alleges that Pfeil and Nocek then converted the remaining $719,364.41 that belonged to plaintiff. Pfeil and Nocek distributed $2,720,000 to Pfeil personally, $650,000 to Nocek personally, $100,000 to pay legal fees for themselves and their business entities, and then left $100,000 in the account under their control.

**DISCUSSION**

**I. Legal Standard**

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir.1999). When ruling on a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Szumny v. Am. Gen. Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir.2001). Further, the court will not consider documents or other materials beyond those attached to or referred by the complaint itself. *See* Fed. R. Civ. P. 12(d); *see also Scibetta v. Rehtmeyer, Inc.*, 2005 WL 331559, at *1–2 (N.D. Ill. Feb. 9, 2005) (considering contracts attached to the plaintiff's complaint, but not exhibits attached to a motion to dismiss) (citing *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir.1994)). To survive a Rule 12(b)(6) motion, a plaintiff need not provide detailed factual allegations, but must provide "more than labels and conclusions, and a formulaic recitation of the elements of the cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

Fed. R. Civ. P 12(f) provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, or scandalous matter." *Cumis Ins. Soc., Inc. v. Peters*, 983 F.Supp. 787, 798 (N.D. Ill.1997). A movant must show that the allegations are devoid of merit, unworthy of any consideration, and unduly prejudicial. *Id.* A motion to strike is

generally disfavored. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir.1989).

**II. Conversion**

In Count I of the Amended Complaint, plaintiff alleges that by jointly distributing and acting in concert to take the joint venture funds for themselves, Pfeil and Nocek converted $719,364.41 that belonged to plaintiff. Pfeil has moved to dismiss Count I for failure to state a claim, arguing that the Amended Complaint fails to establish a recognized cause of action for conversion of funds. The court agrees.

This court previously dismissed plaintiff's original claim of conversion as insufficient to state a claim for conversion of money. TABFG, LLC v. Pfeil, 2009 WL 1209019 (N.D. Ill. 2009). In its Amended Complaint, plaintiff now alleges that as a result of the profits it earned from the joint venture, it had an "immediate right" to $1,019,634.41 of the funds held in the account at Lakeside Bank. The Amended Complaint also alleges that the plaintiff "made numerous requests and demands to Pfeil, Anthony, and Nocek that the funds of the joint venture be distributed in accordance with the joint venture agreement." Plaintiff also alleges that Pfeil and Nocek then "wrongfully assumed control over" $719,364.41 of the plaintiff's funds in the account by distributing the money to themselves and for their own benefit.

To state a claim for conversion, plaintiff must allege: (1) an unauthorized and wrongful assumption of control, dominion or ownership by defendant over plaintiff's personalty; (2) plaintiff's right to the property; (3) plaintiff's right to immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property. *Fonda v. Gen. Cas. Co. of Ill.*, 279 Ill.App.3d 894, 899 (1st Dist. 1996). Because the claim alleges a conversion

4

of money, the money must be capable of being described as a specific chattel, meaning plaintiff must have a right to "a specific fund or specific money in coin or bills." *Mid-America Fire and Marine Ins. Co. v. Middleton*, 127 Ill.App.3d 887, 892 (4th Dist. 1984). The money does not have to be "specifically earmarked" for plaintiff, and need not always be a segregated fund, but the converted funds must be "capable of being described, identified or segregated in a specific manner." *Indep. Trust Corp. v. Fidelity Nat'l Title Ins. Co. of New York*, 2007 WL 1017858, at *24 (N.D. Ill. 2007) (and cases cited therein).

"Although money may be a subject of conversion if described as a specific chattel, an action for conversion of funds does not lie to satisfy a mere obligation to pay money." *Southwest Whey, Inc. v. Nutrition 101, Inc.*, 155 F.Supp.2d 1003, 1007 (C.D. Ill. 2001). "It must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use." *In re Thebus*, 108 Ill.2d 255, 261 (Ill. 1985). "[T]he plaintiff's right to the money must be absolute." *Horbach v. Kaczmarek,* 288 F.3d 969, 978 (7th Cir. 2002).[1]

Plaintiff contends that its conversion claim is proper because it has "identified specific funds to which it is entitled" and "not a general debt owed to it." In support of its position, plaintiff argues that *Roderick Dev. Inv. Co. v. Cmty. Bank of Edgewater*, 282 Ill.App.3d 1052 (1st Dist. 1996), stands for the proposition that if a joint venturer can calculate the portion of an identifiable fund it is owed from the joint venture, that money is subject to a conversion claim

---

[1] *Accord Deming v. Nationwide Mut. Ins. Co.*, 279 Conn. 745 (Conn. 2006).
"A mere obligation to pay money may not be enforced by a conversion action . . . and an action in tort is inappropriate where the basis of the suit is a contract, either express or implied. Consistent with this rule, in our case law sustaining a cause of action wherein money was the subject of the conversion or theft, the plaintiffs in those cases at one time had possession of, or legal title to, the money." *Id*. at 772 (citations omitted).

and is not merely a general debt. Plaintiff mischaracterizes *Roderick*. To begin with, Roderick was not a partner in a joint venture, but rather the assignee of a beneficial interest in a trust. *Id*. at 1053–54. After the trust became indebted to a bank, it entered into an agreement to assign its right in the monthly proceeds that it received from a note to the bank, subject to Roderick's interest. Under the terms of that agreement, the bank agreed to collect payments on the note and disburse payments to Roderick according to his share in the trust. *Id*. at 1054. When the bank failed to distribute its share of the final payment on the note, Roderick alleged that the bank had converted its funds. The court held that the plaintiff had asserted a proper claim for conversion. *Id*. at 1060. In support of its decision, the court determined that the funds were not merely a portion of the bank's own assets, but were identifiable since a specific amount had been transferred to the bank from an outside source. *Id*. at 1059. The court also concluded that no debtor-creditor relationship existed since the funds were "transferred to the Bank pursuant to an agreement to which [Roderick] was not a party." *Id*. at 1060.

In contrast, in the instant case, the account at the Lakeside Bank contained "all of the funds belonging to the joint venture." Thus, the funds at issue are not identifiable as a specific chattel, but were merely a portion of the joint venture's bank account. Nor does the plaintiff's allegation of a specific amount of that account establish that the funds are identifiable. *Payton v. County of Kane*, 301 F.Supp.2d 835, 839 (N.D. Ill.2004) ("Simply placing a specific dollar amount on the money in question is not sufficient to make it a 'specific fund.'" (citation omitted)).

In addition, at no time did the plaintiff have possession, or legal title, to the funds sought. Plaintiff's right to the money arises from the terms of the parties' agreement, which "provided

6

for a distribution of 50% of the Net Trading Profits" less "certain start up expenses, legal fees and settlement costs advanced." The complaint alleges that these funds "should have been distributed" and that NT Prop "violate[d] its contractual duties" by failing to distribute the "amount due." Consequently, the court finds that plaintiff's claim is not one for conversion of an identifiable property interest, but instead represents a claim for a general debt or obligation it is owed by NT Prop. *See Goel v. Patni Computer Systems, Inc.*, 2008 WL 4185691, at *10 (C.D. Ill. 2008) ("Plaintiffs allege that they were not paid for their work as promised. That is a claim that Patni has an obligation to pay them money from its own funds, not that Patni is withholding a sum of money that has always belonged to Plaintiffs . . . ."); *Southwest Whey, Inc. v. Nutrition 101, Inc.*, 155 F.Supp.2d 1003, 1007 (C.D. Ill. 2001) (determining that a partner's unpaid share of profit margins in a dispute concerning the dissolution of a joint venture "constituted a debt"); *Salamon v. Messina*, 1990 WL 205454, at *2 (N.D. Ill. Dec. 5, 1990) (finding that sales commissions owed to salesman are "more akin to a general debt or obligation, as opposed to an identifiable property interest").

Plaintiff has failed to allege a recognized cause of action for conversion of money. Accordingly, Count I is dismissed for failure to state a claim.

### III. Tortious Interference with Contract, Conspiracy, and Punitive Damages

In Count II, plaintiff alleges that Pfeil tortiously interfered with plaintiff's contract with the joint venture. Count III alleges conspiracy to tortiously: convert funds; interfere with plaintiff's business relations and the fiduciary duties owed to plaintiff; and, interfere with plaintiff's contractual relations and the duty of NT Prop to make distributions. Count IV seeks punitive damages and alleges that Pfeil willfully engaged in the tortious conduct described in the

7

Amended Complaint. Pfeil has moved to dismiss Counts II, III, and IV, arguing that plaintiff cannot establish that a valid and enforceable contract existed because of plaintiff's breach. To state a claim for tortious interference with contract, plaintiff must allege: (1) the existence of a valid and enforceable contract between it and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional and unjustified inducement of the third party to breach the contract; (4) breach by the third party; and (5) damages as a result of the breach. *Strosberg v. Brauvin Realty Services, Inc.*, 295 Ill.App.3d 17, 32–33 (1st Dist. 1998). The Amended Complaint alleges that plaintiff entered into a Joint Venture agreement with NT Prop in April, 2003 and that Pfeil caused NT Prop to breach that agreement. Accepting the allegations in the complaint as true, plaintiff has sufficiently alleged the existence of a valid and enforceable agreement.

Pfeil also argues, in the alternative, that since he held a privilege to act in the interest of Pfeil Commodities and NT Prop, Counts II, III, and IV should be dismissed because a party cannot interfere with its own contract. However, the Amended Complaint sufficiently alleges that Pfeil acted "for his own personal interest" as a third party, and the court need not assess the merits of Pfeil's privilege defense in this motion to dismiss. Accordingly, defendant's motion to dismiss Counts II, III, and IV is denied.

Pfeil has also moved to strike the allegation in Count III of conspiracy to "interfere with TABFG's advantageous business relations." "In order to state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement." *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill.2d 102, 133 (Ill. 1999). In a previous order, this court dismissed plaintiff's claim of tortious interference with prospective

8

economic advantage for failure to state a claim. TABFG, 2009 WL 1209019 at *2. As a result, plaintiff's allegations that the same facts constitute a tortious act to support a claim of conspiracy are without merit and ordered stricken. In addition, the court also orders that the reference in Count III of conspiracy to convert funds be stricken because the conversion claim (Count I) is also being dismissed for failure to state a claim.

## CONCLUSION

For the reasons discussed above, defendant's motion to dismiss is granted as to Count I, denied as to Counts II, III, and IV, and the motion to strike references in Count III as to previously dismissed claims is granted. Plaintiff is directed to file a Second Amended Complaint conforming to this opinion on or before November 19, 2009. Defendant is ordered to answer the Second Amended Complaint on or before December 10, 2009. This matter is set for status on December 17, 2009 at 9:00 a.m.

**ENTER:** October 28, 2009

_____
**Robert W. Gettleman**
**United States District Judge**